## MORRIS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

1. PERPETUITIES (§ 6*)—TESTAMENTARY TRUSTS—SUSPENSION OF POWER OF ALIENATION.

Where a testator devised and bequeathed all his property to a trustee, to pay over the net income to his seven children during their lives, and upon the death of any of such children to pay the capital of the share of which such child received the income as directed by his or her last will and testament, and in default to the lineal descendants of such children, or, if none, then to the surviving children, the trust is invalid, because the property might not vest in absolute ownership for the term of more than two lives in being at the creation of the estate; it not being sufficient that the property might, by any possibility, be vested within that period.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 47, 49–53, 56; Dec. Dig. § 6.*]

2. EMINENT DOMAIN (§ 158*)—PAYMENT OF COMPENSATION INTO COURT.

Where a particular provision of a testator's will, devising property in trust to his seven children, was invalid, and the property was conveyed, not only by the trustee, but by the children, the grantee took good title, which could not be questioned, and upon condemnation by the city of New York, it was improper for the city, in view of Water Supply Act (Laws 1905, c. 724) § 17, providing that it should, within three calendar months after the confirmation of the report of the commissioners of appraisal, make payment to the respective owners, to pay the money into court for possible adverse claimants; the commissioners of appraisal having found that the land belonged to the grantee.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 426, 428–432; Dec. Dig. § 158.*]

Appeal from Trial Term, Otsego County.

Action by Katherine C. Morris against the City of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Archibald R. Watson, of New York City, for appellant.

Merritt Bridges, of Morris, for respondent.

LYON, J. This action was brought to recover the amount of an award made by the commissioners of appraisal for about 182 acres of land situated in the county of Westchester, acquired by the city of New York in connection with the Kensico Reservoir, pursuant to the provisions of chapter 724 of the Laws of 1905, and amendatory and supplemental acts, relating to providing an additional supply of pure and wholesome water for the use of the city of New York.

[1] The important question at issue is whether the plaintiff, at the time of the vesting of title thereof in the city of New York, January 26, 1909, had title in fee simple to a tract of 79 acres, constituting a part of the 182 acres; the title to the remaining 103 acres concededly being in plaintiff. The title of plaintiff to the 79-acre tract is dependent upon the validity of the title obtained by Louis Prigge, her grantor, under conveyance made to him by the Frankford Real Estate, Trust & Safe Deposit Company of Philadelphia, Pa., and by the widow and heirs at law of Edward H. Middleton of that city. Concededly Edward H. Middleton was seised in fee simple of the 79-acre parcel. He died in 1905, leaving a will, which was duly probated in the state of Pennsylvania the same year, and of which an exemplified copy was recorded in the surrogate's office of Westchester county, N. Y., in July, 1906. The testator, after making certain specific gifts, devised and bequeathed all the residue and remainder of his property to said Trust & Safe Deposit Company, its successors and assigns, in trust to keep invested his personal estate, "and to pay over and distribute the net income received from both real and personal estate amongst my seven children for and during the terms of their respective lives in the following proportions," which he states shall be one-seventh thereof to each of his seven children, but "subject to the deduction hereinafter stated" as to three of the children, as to whom he directs that his trustee shall deduct from the capital of the share, of which the income is given, the sum of $2,500 as to two of his children and $5,000 as to the third, "the income of which is to be equally added to and divided amongst the shares of my six other children," exclusive of one or two who are named. The will then provides:

"And I further trust from and immediately after the respective deaths of any of my children in trust to pay and distribute the capital of the share of which the child so dying received the income in his or her lifetime in such manner as said child shall appoint and direct by his or her last will and testament, and in default thereof to pay over and distribute said share to the lineal descendants of such deceased child per stirpes; and in case any and so often as any of my children shall die without leaving lineal descendants surviving such decedent, then in trust to hold the said share of the child so dying for the surviving brothers and sisters (the issue of any deceased brothers and sisters to take per stirpes) upon the same trust as the original shares herein devised and bequeathed to my trustees for the benefit of said

surviving brothers and sisters, and with the same force and effect as if the said accrued shares had been one of the original shares so devised and bequeathed."

The will empowered the trustee and its successors and assigns to sell and convey any and all of the testator's real estate. In July, 1906, said trustee by full covenant deed conveyed to Louis Prigge said 79-acre parcel, and in September, 1906, the said seven children of Edward H. Middleton, who constituted his only heirs at law, also conveyed said parcel to said Prigge by deed, in which they ratified and confirmed said conveyance by said trustee, and in which the wives of the heirs at law who were married and the widow of Edward H. Middleton joined.

The fifth clause of the will was clearly invalid, as unlawfully suspending the power of alienation for the term of more than two lives in being at the creation of the estate. In determining as to the validity of this clause of the will, the court could not consider the possibility of the estates attempted to be created terminating within the prescribed period. As was said in Matter of Wilcox, 194 N. Y. 288, 295, 87 N. E. 497, 499:

"In determining the validity of limitations of estates, under the above statutes [the provisions of the Revised Statutes in reference to absolute ownership and restraint of alienation], it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void."

The fifth clause of the will being invalid, the title to the 79-acre parcel vested upon the death of Edward H. Middleton in his heirs at law, and the said deed given by them to Prigge in September, 1906, vested a good title in him.

[2] However, the defendant in its reply brief states that the real issue involved upon this appeal is not whether the trust sought to be created by the Middleton will is valid or invalid, but whether the notice of the conveyance by the Trust & Safe Deposit Company, in violation of section 156 of the Banking Law as it existed in 1905, did not make it imperative for the defendant for its own protection to pay the money into court. Section 18 of chapter 724, Laws of 1905, provided that the city of New York might pay an award into court "where there are adverse or conflicting claims to the moneys awarded as compensation," and the order confirming the report of the commissioners of appraisal granted in March, 1910, provided:

"And where there are adverse or conflicting claims to the amounts awarded * * * the said comptroller shall pay the sum so mentioned in said report payable to said owner * * * into the Rockland County Trust Company, to the credit of such parcel and subject to the further order of this court."

Upon the hearing before the commissioners no claim of ownership of the land or of right to the award was made by any person other than plaintiff, nor was any adverse claim made upon the trial of this

action in June, 1912, nor, so far as the record discloses, at any time prior thereto. The commissioners reported that the plaintiff herein was the owner of the land and entitled to be paid the sum of $41,000, and the report was confirmed as above stated after hearing both parties hereto, and the order of confirmation has not been modified or reversed. The sole reason stated by the defendant in the letter of August 26, 1911, for paying the award into court was the complications which had arisen in regard to the exception contained in the abstract of title. It would seem to matter very little whether the said Trust Company, as executor and trustee, could legally execute a conveyance of lands situated within this state so long as the clause of the will under which the Trust Company and any successor must derive its power was invalid. The title of Prigge, and hence of plaintiff, as his grantee, would seem to have been perfect. The trustee having received the purchase price and executed the conveyance, neither it nor its cestuis que trust could have any claim upon the award; and the heirs at law, in consideration of such payment by Prigge, having conveyed said parcel and ratified and confirmed the said conveyance by said Trust Company, could make no claim to the award. In view of these facts, no person, either as a devisee under the will of Edward H. Middleton or as an heir at law, could have had any right or interest in the award. Hence the defendant was not justified in paying the award into court, thereby subjecting the plaintiff to the expense and delay attending the prosecution of legal proceedings necessary to obtain the moneys, and to considerable loss of interest thereon.

The Water Supply Act contemplated prompt payment of the award. Section 17 of that act provided that the city of New York should, within three calendar months after the confirmation of the commissioners of appraisal, make payment to the respective owners of the amount of the award, with interest from the time of filing certified copies of the oath of office, at which date, February 26, 1906, the title had vested in the city of New York. That section also provided that, in case of default or neglect in payment within the three months, the claimant, after application first made by him to the comptroller of the city of New York for the payment thereof, might sue for and recover the same with interest and costs, and that it should be sufficient to declare generally for so much money due to the plaintiff, and that the report of the commission, with proof of the right and title of the plaintiff to the sum demanded, should be conclusive evidence in such suit. It was conceded upon the trial that demand for payment of the award to the plaintiff was made upon defendant June 22, August 17, and August 30, 1911. The defendant has raised no question as to the plaintiff's title to any portion of the 182 acres taken, excepting as to this 79-acre parcel.

I think that the judgment in favor of plaintiff, for the amount of the award and interest, should be affirmed. All concur.